You may proceed. Thank you. May it please the Honorable Court, Richard Schoenfeld from the Law Offices of Chesnoff and Schoenfeld appearing on behalf of the appellant. Under the Anti-Terrorism and Effective Death Penalty Act, the appellant must demonstrate that the Nevada Supreme Court unreasonably applied clearly established Federal law. In this case, the clearly established Federal law is that which is outlined in Strickland v. Washington and Miranda v. Arizona. In Strickland, the Court outlined and addressed the Sixth Amendment guarantee to the right of effective assistance of counsel in criminal prosecutions. In Miranda v. Arizona, the Court addressed the Fifth Amendment right against self-incrimination as well as the due process clause to the Constitution protections when addressing the Fifth Amendment right against self-incrimination. The issues in this case for this Honorable Court to review are under a de novo review because they relate to issues of law. Under Strickland, the appellant must demonstrate that his counsel's performance fell below the objective standard of reasonableness, and he must address the prejudice element, two elements. In this case, there are three instances where the conduct of his counsel fell below the objective standard of reasonableness and he was prejudiced. The first issue is the failure of any of his counsel to advise him of the right and the ability to file a motion to suppress his statements. The second issue is the failure to file a motion to withdraw his guilty plea after being specifically retained for that purpose. And the third issue is the failure to prepare for sentencing. In order to address the suppression issue, we have to take a look at the facts of the case. And what we have here are the appellant's wife goes missing. The appellant's wife's friend contacts the Henderson Police Department in Nevada and reports that she's missing. They come to the house. They leave a business card on the door. After a 24-hour period of time lapses, the appellant decides it's time to report his wife missing. He contacts the officer that left the card on the door. Unbeknownst to the appellant, that officer was investigating the appellant as a suspect of sexual abuse towards his children. To that end, the officer tells him to come down to the police department and bring his three children with him. He complies. He gets to the police department. He sits in the foyer, and they take his 4-year-old daughter, Elizabeth, into an interview room, and they leave him in the foyer with his two other children to fill out a voluntary statement regarding the wife's disappearance. The officer then uses what they call a forensic interview using anatomical drawings and with the 4-year-old daughter elicit statements that he believes are incriminating towards the appellant. The officer then decides to go into the lobby and ask for the other two children to join the 4-year-old daughter in the interview room. The report says that immediately the appellant stood up and said, what's going on here? Tried to have contact with his children. At that time, the officer takes the appellant out of the public foyer area and places him into a separate interview and interrogation room, denying him access to his children. He then interrogates him. What did he say? How did he ñ what did he say when he put him into the interview room? At that time, the officer told him that he wasn't allowed to be with his children. He jumped up and objected and said, what's going on here? And the report then says that they placed him into an interview room. Because the court didn't hold an evidentiary hearing on this issue, it's difficult. We're stuck with the facts that we have. That's what the report says, Your Honor. When he's in this interview room, there's one police officer. They start interrogating him. There's no question there's interrogation. This is going to boil down to whether or not he was in custody under the totality of the circumstance analysis. When he finds that he's getting incriminating statements, he calls in a second officer to, quote, witness the interview. They then interview him for approximately an hour, at which time they decide they have enough incriminating information. They want to get it documented. So they say to him, well, you now fill out a police report outlining exactly what you just said to us. He invokes his right to counsel, and he's arrested. What's significant is that when he was arrested, the officer in his report stated that he wasn't at all surprised that he was being arrested. The significance of that is that both the Nevada Supreme Court and the respondent in this case cite Stansbury v. California for the notion that the officer's subjective belief as to whether or not the interrogee is a suspect is irrelevant unless, by word or deed, it is conveyed to the person being interrogated that he is a suspect. In this case, the fact that appellant was not at all, that's the quote, not at all surprised that he was being arrested demonstrates that, by deed, it was conveyed to appellant that he was a suspect of a crime. Now, when that occurs under Stansbury v. California, now that factor, the factor that he was a suspect in the sexual abuse allegation, becomes one of the factors in the totality analysis. So the factors that we have in this case include that it was under U.S. v. Dickerson, this was not a public interrogation, this was not a brief interrogation, and this was not an interrogation that was not dominated by police. We have the three, the flip side of the three factors in U.S. v. Dickerson. This was not public. This was dominated by police. There were two officers interrogating him. And this was lengthy. It was approximately an hour. And at the time he invoked his right to counsel, he was arrested. So we have that he's at the police department, he's denied access to his children, he's placed into an interrogation room, and he's not afforded the opportunity to speak to counsel. To suggest that he wasn't free to leave, it's a standard that obviously has to be considered here. It's what the reasonable person in Mr. McCormick's position would feel. To suggest that he wasn't free to leave would suggest that he had to leave his 4-year-old daughter at the police department because he was denied access to his children. When he jumped up and objected and said, I want to talk to my children, they put him into an interview room. So what was he supposed to do at that point in time, leave and leave his 4-year-old daughter with the police? Clearly, a reasonable person wouldn't feel that they were free to leave. You take it a step further. Kennedy. I suppose he could leave the interview room and go back out to the foyer or something. Well, but still he wouldn't be allowed to leave the police department. So when we take it, if we look at Dickerson, what's interesting in that case is the United States Supreme Court said that Miranda is, in fact, a concrete guideline for the police to follow when interrogating somebody. And in this case, they failed to follow that concrete guideline. Well, this is a habeas case. Yes. So we aren't deciding whether there was a Miranda violation. We're deciding whether or not, as I understand it, the State Supreme Court issued an unreasonable decision that there was not a Miranda violation. So what did the State Supreme Court say? For the prejudice prong, we have to actually establish that the evidence should have been suppressed here. You have to show in order for ineffective that the evidence should have been suppressed. Right. And what the State Supreme Court did is they applied Stansbury v. California. And they said because the officer's subjective belief that McCormick was a suspect here is irrelevant, the evidence wouldn't have been suppressed. They made a determination that under Miranda, the appellant was not in custody for purposes of Miranda and the trigger of a custodial interrogation. One thing that's kind of interesting on these sort of derivative constitutional claims, if you will, when people aren't really attacking the supposed original offense, they're saying it's an IAC. Here we have the Nevada courts all saying, look, we look at these facts and we don't think we wouldn't have suppressed it. We don't think it's suppressible evidence. What is an attorney practicing in Nevada supposed to think at that point? He's practicing in Nevada. He knows how they approach these issues. And we're talking about a plea agreement. He's trying to save this guy some problems considering what he's done. So we're talking about a plea agreement. And he – and let's say he says to himself, Nevada courts don't think this is suppressible under these circumstances. And we know that's true. They don't. Is he really guilty of ineffective assistance of counsel? He is, and here's why, Your Honor. And that draws in the distinction between this case and the Tillett case and the McMahon case. In those two cases, they address that when someone enters a guilty plea, it breaks the chain and causation of effectiveness. Anything that could have been done prior to the entry of a plea shouldn't then be challenged because you've now entered a plea. The distinguishing factor in this case is that nobody ever discussed the option with the defendant. Nobody ever said, you know, you have the ability to file a motion to suppress the statement here. There's no physical evidence in this case. So the confession is really the big hit here. Nobody ever told him he had that ability. So it's not one of these cases where he said, well, I could file a motion to suppress evidence, and right now they're going to give me a better deal because I haven't filed it. This is a case where nobody even discussed it with him. And, Your Honor, that's the distinguishing factor between someone saying, well, the Nevada Supreme Courts aren't suppressing evidence like this or the McMahon and the Tillett decision where the person actually made a conscious decision not to file the motion to suppress before they entered the plea. But that's a different question. The question is, does counsel have to present all of that to him, or can counsel say, look, I'm not even going to mess around with Miranda because there ain't a Miranda problem here in Nevada? Your Honor, the Sixth Amendment right to effective assistance of counsel and the right to consult with your attorney, I believe that the attorney would have an absolute obligation to present the defenses to the defendant. On some things, not on everything. I mean, obviously, counsel doesn't have to consult the defendant on every move he makes. On a violation of the Fifth Amendment, Your Honor, I would hope that's one of the things that the attorney would discuss. It's a clear loser. You know, if what counsel comes up with and says, I suppose one could do this, but it would be a clear loser, he's so there's no point in doing that. Does he still have an obligation to discuss it with the client before the guilty plea? Yes. He has an absolute obligation. He can't make every conceivable argument he has or only a constitutional argument. A motion to suppress, which was the biggest defense in this case, I would feel that it's complete ineffectiveness for the attorney not to discuss that the defendant had a Fifth Amendment right against self-incrimination that was potentially or conceivably violated and that it was a motion that could be filed prior to pleading guilty in this case. Okay. Thank you. Appreciate your argument. I'll submit on the remaining issues in the brief. Thank you. May it please the Court, counsel. My name is Robert Whelan. I'm a senior deputy attorney general employed by the Office of the Attorney General of the State of Nevada, and I have the privilege of representing the Respondents in this particular matter. I believe counsel has misstated what the precise issue is in this. The issue, Mr. McCormick in this case pled guilty to one count of unenhanced sexual assault on his daughter. In exchange for that guilty plea, the State did not pursue one, two, two other counts of lewdness with a child under the age of 14 and four other counts of sexual assault of a minor under the age of 14. Another one of those counts or, excuse me, two of those counts involving his daughter Elizabeth, the other two involving his daughter Diana. This case is properly analyzed under Hill v. Lockhart. And what needs to be the focus of this needs to be is the but for counsel's supposed ineffectiveness, the defendant would not have pled guilty and would have insisted on going to trial. And I suggest to the Court that the record clearly shows that the Nevada Supreme Court did not err in its determination. As I pointed out, Mr. McCormick was set off of six other counts, resulting in a net savings to him of no less than six life sentences with the possibility of parole with the parole eligibility either at 10 years or 20 years, depending on the particular count. So there was a substantial benefit to Mr. McCormick in accepting the guilty plea in this particular case. As I said, the sexual assault to which he pled guilty was an unenhanced sexual assault, which enabled him to have parole after 10 years as opposed to 20 years if it were alleged under a child under the age of 14. Therefore, there was a substantial and incredible benefit to Mr. McCormick in this particular case. Mr. McCormick waived his preliminary hearing in exchange for these negotiations and the plea canvas very clearly shows that his guilty plea was knowing, intelligent and voluntary. Counsel has made various incendiary representations which have not been established as fact, particularly the assertion that nobody discussed the possibility of a motion to suppress with him the plea negotiations or, excuse me, the memorandum of plea negotiations which Mr. McCormick signed and acknowledged he signed before the Court says that he discussed with his attorney any possible defenses, defense strategies and circumstances that might be in his favor. That being the case, one still has to examine whether or not this motion to suppress he would have even considered it. Frankly, there is no basis based on the allegations presented in the Federal habeas petition upon which a court could conclude that he was in custody when he made the statement. Kennedy. Well, the question is would a reasonable, objectively reasonable person feel free to leave under the circumstances as described? Based on what he alleged in the habeas petition, it's very clear that he had no expectation of not being able to leave. Well, look, we're taking your children into this other room. I object. Well, you go into that room and you stay there. We're taking the children into the other room. We're going to come in and ask you questions for an hour. And you think after a couple of minutes in there, he'd just say, well, I'm sorry, gentlemen, I've decided to terminate this interview and leave. Now you can bring my children back, which they wouldn't do before when he objected. And I'm leaving. Well, you're interjecting into the factual scenario his statement that he objected. That was not alleged in the Federal habeas petition. The allegation was that he went down there to report his wife missing. His children were somewhere in another interview room. And then when they asked him questions, he invoked his right to counsel. Well, you go down to prison. You go down to report your wife missing, and they tell you to bring your kids. And then when you get there, they take the kids away to another room for interviews. Again, Your Honor, with all due respect, you're introducing allegations in there that were not pled in the habeas petition. What did the habeas do? I don't have it right before me. What did they say? I might add while I'm looking for this, Your Honor. If you feel you're using up too much of your time, I'll read it after the arguments. Excerpt of Record 329 of your time at the Federal habeas. Your Honor, I would point out in the Yarbrough case, the Supreme Court has said in determining whether or not State court unreasonably applied federally established federal laws to permit federal habeas corpus relief under the AEDFA, the more general the rule being applied, the more leeway the State court has in reaching outcomes in a case-by-case determination. In this particular case, as in, you know, many cases, whether or not somebody is in custody is determinative based on, you know, the particular facts. In this particular case, based on the factual allegations presented to the court, they said there wasn't any custody. So based on what was presented to the court, and sorry, Your Honor. If I understand it, he has to, in order to show ineffective assistance of counsel, he has to show prejudice. That's correct. In this particular. Which is that it would have been suppressed. Well, not only that, he has to show because he pled guilty, he would not have pled guilty and would have insisted on going to trial. And in view of the plea negotiations in this and the evidence against him, the great benefit conferred on him, there's no, that just wouldn't have happened. I mean, he would not have insisted on going to trial. Even if it had been suppressed, you said, here I made the same deal. Yes. Even if his statement could have been suppressed, he still has the statements of his two daughters, you know, regarding the sexual assaults that he committed against them, the numerous sexual assaults and lewdness acts, lewd acts that he committed with them. So even if he gets rid of his statement, which is, you know, to a certain degree inculpatory, he's still got. There's still a lot of evidence against him. Absolutely. Unless the Court has any other questions, Your Honor, I can still, if I might have just a minute, I'll find exactly what it was that was. No, I can find it. That's it. That's it. Are there any further questions? There don't appear to be any. Okay. Thank you. Thank you. All right. Where are we? Did you? He used his time. You used your time. Okay. Thank you. Then the case to start is submitted.
judges: Schroeder, Canby, Fernandez